UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | | |
|---|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | ) ) ) | |
| Petitioner, | ) ) | No. 6:13-CV-95-KKC-HAI |
| v. | ) ) | RECOMMENDED DISPOSITION |
| WAL-MART STORES EAST, LP, | ) ) | |
| Respondent. | ) ) | |

\*\*\* \*\*\* \*\*\* \*\*\*

Petitioner, the Equal Employment Opportunity Commission ("EEOC"), applies to the Court for enforcement of an administrative subpoena served on Respondent, Wal-Mart Stores, East, LP ("Wal-Mart"). D.E. 1. The EEOC issued the subpoena in the course of investigating a charge by Alice Collett that "she was subjected to a physical abilities test which she believed had a disparate impact on female applicants and that she had been retaliated against as a result of her participation in a previous EEOC lawsuit against Wal-Mart." D.E. 1-1 at 2. District Judge Bunning ordered Respondent to show cause why it should not be compelled to comply with the issued subpoena and to state any objections to the petition. D.E. 2. Judge Bunning also referred the case to the undersigned for the purpose of conducting a hearing on whether Respondent should be compelled to comply with the subpoena. *Id.*

On May 22, 2013, Wal-Mart moved that the case be reassigned to Chief Judge Caldwell because it is related to a previous case involving the same parties over which Chief Judge Caldwell presided for nearly 12 years. D.E. 5. Wal-Mart then filed its Response to the Court's order to show cause which opposed the application on several grounds. D.E. 7. On June 4, 2013, the case was reassigned to Chief Judge Caldwell. The undersigned conducted a hearing on

the matter on July 2, 2013. D.E. 17. The Court ordered post-hearing briefing, *id.*, which is now complete. The matter is ripe for review. For the reasons set forth below, the Court **RECOMMENDS** that the District Court **GRANT IN PART AND DENY IN PART** the EEOC's Application and order enforcement of the subpoena as described below.

## I. BACKGROUND

In order to fully relay the facts of this case, it is necessary to delve into the proceedings of the related case *Equal Employment Opportunity Commission v. Wal-Mart Stores, Inc.*, 6:01-CV-339-KKC-REW ("Case No. 01-339"). The same Alice Collett who submitted a charge to the EEOC in the instant case was a plaintiff in Case No. 01-339, a class action lawsuit alleging that Wal-Mart discriminated on the basis of sex, which was resolved by way of a Consent Decree approved by the Court. D.E. 7 at 3, 5. Certain terms of the Consent Decree are the primary, though not sole, bases for the dispute between the parties in the instant case. Those terms are Section 103: Non-Retaliation, Section 901: Role of EEOC, and Section 1102: Retention of Jurisdiction. 6:01-CV-339-KKC-REW, D.E. 669 ("Consent Decree") at 2, 15, 16. Section 103 reads:

> Wal-Mart, its officers, agents, servants, employees, successors in interest and all persons acting in concert with or on its behalf shall not discriminate against any of its applicants, employees, or former employees, because the individual (a) made a charge or opposed an unlawful employment practice under Title VII or (b) assisted or participated in any manner in this case or any other investigation, proceeding, or hearing under Title VII [of the Civil Rights Act of 1964].

*Id.* at 2. Section 901 reads, in relevant part, "The EEOC may review compliance with this Decree. As part of such review, the EEOC may inspect the premises, interview employees, and request, examine, and copy documents upon reasonable notice." *Id.* at 15. Section 1102 states, "Upon entry by the Court of the Order under Section 604, the parties agree to submit an Order of

Dismissal, dismissing this action with prejudice, with the Court to retain jurisdiction for five (5) years solely for purposes of enforcing the terms of this Decree." *Id*. at 16.

Alice Collett submitted a Charge of Discrimination to the EEOC on October 4, 2010, stating, under penalty of perjury, that she submitted an application of employment to Wal-Mart Distribution Center 6097 ("DC 6097") in London, Kentucky, on September 13, 2010. D.E. 1-4. She further stated that she was given a physical abilities test ("PAT") that she was not required to take when she first applied to DC 6097. *Id.* She was informed three days later that her test scores on the PAT were non-competitive, and that she would not be hired. *Id.* Collett alleges that: 1) the PAT was administered in such a way as to disadvantage her and other women; 2) the PAT has a disproportionate impact on women as a class; 3) she was retaliated against for being a class member in Case No. 01-339 by being subjected to the PAT, as well as other unspecified criteria, and by not being hired, and; 4) she was not hired because of her sex. *Id.*

On October 8, 2010, the EEOC alerted Wal-Mart to Collett's charge via a Notice of Charge of Discrimination. D.E. 1-5. The Notice directed Wal-Mart to respond to an accompanying request for information by November 5, 2010. *Id.* On October 15, 2010, the EEOC filed a Motion to Enforce Consent Decree in Case No. 01-339. *EEOC v. Wal-Mart Stores, Inc*., 6:01-CV-339-KKC-REW, D.E. 670. It alleged, *inter alia*, that Wal-Mart had breached the Consent Decree by forcing class members to apply for jobs, rather than being instated, and by subjecting the class members to employment tests, specifically the PAT and Logistics Pre-Employment Assessment, that were not contemplated by the Consent Decree. *Id.* at 3, 5. The Motion sought relief in the form of instatement of the class members, an injunction barring interference with the right of instatement, and enforcement of Section 901 of the Consent Decree. *Id*. at 5. Following full briefing of the Motion, Chief Judge Caldwell denied the

EEOC's Motion (6:01-CV-339-KKC-REW, D.E. 676), noting that the EEOC did *not* make an allegation that either test at issue has a disparate impact on or otherwise discriminates against women. *Id.* at 6–7.

Wal-Mart began providing information to the EEOC in response to the Notice of Charge of Discrimination in January 2011, which was supplemented by letters on February 22, 2011, and June 9, 2011. D.E. 1-3 at 2. The EEOC then served additional requests for information on November 27, 2012, and January 31, 2013. *Id.* Ultimately, the EEOC determined that the responses from Wal-Mart to its November 27, 2012, and January 31, 2013, requests for information were incomplete. *Id.* It then issued a subpoena *duces tecum* on March 14, 2013, seeking nine categories of information:

1. Provide documents or lists which identify all individuals involved in the decision to begin administering the Physical Abilities Test at Distribution Center 6097 in 2010.

2. Provide documents which indicated the role of each person identified in number 1 in the decision making process to begin using the Physical Abilities Test at Distribution Center 6097 in 2010.

3. Provide copies of all documents relating to the decision to begin use of the Physical Abilities Test at Distribution Center 6097 in 2010.

4. Provide copies of all documents relating to whether the test should be used for class members in EEOC v. Wal-Mart.

5. Provide documents or a list identifying all employees who work at the Respondent's Grocery Distribution Center (6097) location in an Order Filler or Order Filler Supervisory position. For each employee, the record or list should provide the following information:

   a. Employee ID
   b. Last name
   c. First name
   d. Middle name
   e. Job title
   f. Last Known Home address
   g. Last Known Telephone number

       h.   Date of Hire
       i.   Date became order filler or order filler supervisor
       j.   Current Shift assignment
       k.   Current assigned days to work
       l.   Assigned Area (Example: Dairy Deli, Dry, Freezer)

6. Provide copies of documents or a list identifying all incumbent employees by last name, first name, job title, date of hire, who work or have worked at the Respondent's Grocery Distribution Center (6097) location at any time since January 1, 2010 in a position other than the order filler position that have taken the Physical Ability Test at any time.

7. Provide copies of documents of the PAT test for each incumbent employee who took the PAT listed in item 6. State for each person the date the PAT was taken, test administrator, score for each section of the PAT, and whether the incumbent employee passed the PAT.

8. For each of the following years 2010, 2011, 2012, and 2013, provide a chart, documents, or a description of Respondent's Organizational Structure at the Wal-Mart DC 6097.

9. Identify the employee in each position of the organizational structure for each year in item number 8.

D.E. 1-6 at 3–4. The form subpoena provides four separate options, with associated check boxes, describing various ways to respond to the subpoena. *Id.* at 1. The options available to the EEOC were testimony, production with physical delivery, mailing of documents, or providing access to the evidence sought for examination and copying. *Id.* The only box checked in the executed subpoena is the box indicating that the information should be mailed to Investigator Cantwell. *Id.* Thus, the EEOC chose not to seek testimony by way of the subpoena.

On March 22, 2013, Wal-Mart mailed a Petition to Revoke to the EEOC, which was denied. D.E. 1-3 at 3. On April 3, 15, and 23, 2013, Wal-Mart produced documents responsive only as to categories 5–9 in the subpoena. D.E. 1-1 at 4. On May 7, 2013, the EEOC filed an Application for Order to Show Cause Why Subpoena Should Not Be Enforced, alleging that Wal-Mart had not provided information responsive to categories 1–4 and that it had refused to

allow testimony relating to those categories during an on-site investigation.  D.E. 1.  The Application seeks an order requiring Wal-Mart "to comply with the subpoena with respect to documentary evidence as well as directing that testimonial evidence, objected to on the same basis, be provided[.]"  *Id*. at 3.

## II. ANALYSIS

### A.    Authority to Investigate

"Whenever a charge is filed by or on behalf of a person claiming to be aggrieved . . . alleging that an employer . . . has engaged in an unlawful employment practice, the Commission shall serve a notice of the charge . . . on such employer . . . within ten days, and shall make an investigation thereof."  42 U.S.C. § 2000e-5(b).  The EEOC also has the authority to commence proceedings to compel compliance with a court order issued in a civil action brought under Title VII.  *Id.* at §2000e-5(i).  In addition to creating the EEOC and giving it the purposes enunciated above, Congress dictated that the EEOC has the right to access and copy evidence relating to unlawful employment practices that is relevant to the charge under investigation.  *Id.* at § 2000e-8.  "Unlawful employment practices" include failing or refusing to hire, discharging, or otherwise discriminating against "any individual with respect to compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-2(a)(1).  It also includes discriminating against employees or applicants "because he [or she] has opposed any practice made an unlawful employment practice by this subchapter, or because he [or she] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter."  42 U.S.C. § 2000e-3.

Wal-Mart has no quarrel with the fact that the EEOC has the statutory authority to investigate charges of unlawful employment practices, nor with the proposition that the EEOC has the authority to investigate allegations of retaliation so long as there is not a consent decree in a previous related case reserving jurisdiction to the Court. D.E. 18 at 7. It certainly does not question the EEOC's authority to investigate the non-retaliation portion of the claims in Collett's charge, *i.e.*, that the PAT was administered in such a way as to disadvantage women, that the PAT has a disproportionate adverse impact on women as a class, and that Collett was discriminated against on the basis of her sex when Wal-Mart did not hire her. *Id.* at 5.

Instead, Wal-Mart argues that the Consent Decree, through Section 1102, strips the EEOC of its statutory jurisdiction over Collett's claim of retaliation and gives it to the United States District Court for the Eastern District of Kentucky. D.E. 7 at 13. It argues that the EEOC bargained away its statutory right to investigate Collett's claim of retaliation, and that if Wal-Mart were retaliating against Collett, that would be in violation of Section 103, and thus the EEOC would be trying to enforce the Consent Decree, which only the Court can do per Section 1102. D.E. 18 at 11. Wal-Mart argues that the current investigation contravenes the Consent Decree and what it characterizes as exclusive enforcement mechanisms therein. D.E. 7 at 13 ("The Court has retained jurisdiction for purposes of enforcing the Decree, which requires that any alleged violations of the Decree be submitted to the Court for disposition."), D.E. 18 at 11 ("And so what the EEOC bargained for . . . was the mechanism in which to monitor Wal-Mart's compliance in which to cry foul by asserting that a violation exists, and a mechanism for the Court, not the EEOC, to determine whether Wal-Mart has violated this decree."). Thus, Wal-Mart argues the subpoena was not validly issued pursuant to the EEOC's statutory powers.

The EEOC argues in response that it is improper to raise a jurisdictional argument during a subpoena enforcement action. D.E. 14 at 3. It states that once the investigation is complete, if it finds that proceedings in a court of law are warranted, it will use one of the mechanisms available to take the charges to court, and then Wal-Mart may properly raise jurisdiction. D.E. 18 at 46–47. Further, argues the EEOC, even if this was the proper time and place to raise such an argument, it has the authority to investigate alleged violations of both Title VII and the Consent Decree. *Id.* at 46.

The EEOC is an administrative agency vested with specific authorities and duties by Congress, including reviewing, or investigating, charges of unlawful employment practices. 42 U.S.C. § 2000e-5(b). Federal courts, on the other hand, are not agencies vested with general investigatory powers, instead they have the power to adjudicate a case or controversy. Thus, the EEOC investigates a charge of unlawful employment practices and makes a determination of whether or not to file a suit in federal court or issue a Notice of Right to Sue. D.E. 1-1 at 8. It is then the Court's duty to adjudicate the claim presented. *See United States v. Morton Salt Co.*, 338 U.S. 632, 642–43 (1950) ("Federal judicial power itself extends only to adjudication of cases and controversies and it is natural that its investigative powers should be jealously confined to these ends.").

Many of the disputed sections in the Consent Decree merely reflect Wal-Mart's pre-existing legal obligations. Sections 102 and 103 effectively order Wal-Mart to comply with Title VII in regard to female workers and class members. *Compare* Consent Decree at 2 *and* 42 U.S.C. §§ 2000e-2, 2000e-3, and 2000e-5. Section 901 of the Consent Decree allows the EEOC to review Wal-Mart's compliance with the Consent Decree, which is effectively a redundancy of 42 U.S.C. § 2000e-5(i). Consent Decree at 15. However, Section 1102 is not redundant.

Entitled "Retention of Jurisdiction," it provides: "Upon entry by the Court of the Order under Section 604, the parties agree to submit an Order of Dismissal, dismissing this action with prejudice, with the Court to retain jurisdiction for five (5) years solely for purposes of enforcing the terms of this Decree." Consent Decree at 16. Wal-Mart's argument—that this provision strips the EEOC of the power to issue the subpoena—calls into question the meaning of this provision.

Wal-Mart is incorrect that Section 1102 of Court's Consent Decree usurps the authority of the EEOC to conduct its own independent investigation as to Collett's charge of retaliation. Constitutional separation of powers precludes the Court from supplanting the congressional intent embodied in Title VII.[1] Title VII clearly vests within the EEOC the authority to investigate charges of unlawful employment practices and to bring claims to federal court if it finds that a violation has occurred. The Court may not usurp the EEOC's congressionally ordained authority, even with the consent of the parties, and nothing presented suggests that Chief Judge Caldwell intended to do so. Unremarkably, based upon separation of powers, case law supports the EEOC's position on its authority to investigate charges of unlawful employment practices notwithstanding the presence of a consent decree.

"Because judicial power is reluctant *if not unable* to summon evidence until it is shown to be relevant to issues in litigation, it does not follow than an administrative agency charged with seeing that the laws are enforced may not have and exercise powers of original inquiry." *Morton Salt Co.*, 338 U.S. at 642 (emphasis added). The Court in *Morton Salt* also noted:

---

[1] *See e.g.*, *United States v. Hossbach*, 518 F. Supp. 759, 767 (E.D. Pa. 1980) ("[A] court may not usurp the legislative function by taking away from the executive branch powers plainly, unambiguously, lawfully and constitutionally granted by Congress."), *Transwestern Pipeline Co. v. Allied Bank of Tex.*, CIV A No. H-85-4347, 1989 WL 53851 at *3 (S.D. Tex. Jan. 9, 1989) ("[T]his Court may not supplant the congressional intent embodied in this statutory scheme.").

Certainly entry of the court decree did not wholly relieve the [Federal Trade Commission] of responsibility for its enforcement. The decree recognized that. It left to the Commission the right and hence the responsibility "to initiate contempt proceedings for the violation of this decree." This must have contemplated that the Commission could obtain accurate information from time to time on which to base a responsible conclusion that there was or was not cause for such a proceeding.

*Id.* at 638–39. Likewise, the Consent Decree herein left to the EEOC the right, and hence the responsibility, to "review compliance with this Decree." Consent Decree at 15. The reasoning in *Morton Salt* is both persuasive and binding. It would be irresponsible of the EEOC to allege a violation of the Consent Decree without first conducting an investigation. Thus, the EEOC's administrative function requires a mechanism allowing it to investigate charges, lest it make unfounded allegations, whether there is a consent decree in place or not.

The EEOC directs the Court to *EEOC v. Children's Hospital Medical Center of Northern California*, 719 F.2d 1426 (9th Cir. 1983), and in particular a quote from that court: "If we were to say that the consent decree divested the Commission of its power to investigate, [42 U.S.C. § 2000e-5(i)] would lack any substance. How else but through investigation could the EEOC determine compliance with a court decree?" *Id.* at 1429. Wal-Mart argues that *Children's Hospital* does not apply because in that case the EEOC was investigating new and independent claims of discrimination arising after the entry of a consent decree, whereas the EEOC in this case seeks to enforce a consent decree. D.E. 7 at 14. Wal-Mart also argues that *Children's Hospital* is distinguishable because in that case the EEOC was not a party to the consent decree, but it is a party to the consent decree in this case. D.E. 18 at 9. However, both of these arguments miss the mark.

In *Children's Hospital*, the district court had refused to enforce an EEOC subpoena, finding that "the EEOC lacked jurisdiction over the charges because the charging parties and

their claims were subject to the decree." *Children's Hosp. Med. Ctr. of N. Cal.*, 719 F.2d at 1427. The Ninth Circuit reversed. *Id*. at 1437. While the charges in *Children's Hospital* were new and independent claims, the Ninth Circuit proceeded through its analysis of the EEOC's right to investigate after refusing to settle the issue of *res judicata* (stemming from the consent decree) raised by the defendant. *Id.* ("Our refusal to address the *res judicata* question is grounded in the scope of the EEOC's authority to investigate charges of discrimination and compelling Supreme Court authority."). The fact that the charges were new and independent did not inform the Court's analysis, nor did the fact that the EEOC was not a party to the consent decree.

Instead, the Court found several reasons to enforce the subpoena. The first is that a jurisdictional argument is not properly raised at the subpoena enforcement level. *Id.* at 1430 ("[The Defendant's] argument that the EEOC lacks the jurisdiction to investigate plainly falls within the prohibition against raising what normally would be a defense to an action by the agency."). Second, the possibility of a valid defense to a subsequent suit by the agency does not abrogate the agency's jurisdiction. *Id.* at 1429. Finally, it found that even if the consent decree provided a jurisdictional bar to an investigation by the EEOC, the court was required to enforce the subpoena "[a]s long as the evidence sought is relevant, material and . . . unless jurisdiction is plainly lacking." *Id.* (citation and internal quotation marks omitted). Because the subpoena sought to be enforced met those requirements, the Court reversed and remanded to enforce the subpoena. *Id.* at 1431.

Wal-Mart has not alleged that the evidence sought is irrelevant or immaterial. Instead, Wal-Mart directs the Court to *EEOC v. Karuk Tribe Housing Authority*, 260 F.3d 1071 (9th Cir. 2001) for the proposition that "[a] recipient of an administrative subpoena may avoid the

subpoena 'when the agency lacks jurisdiction over the subject of the investigation.'"  D.E. 7 at 11 (quoting *Karuk Tribe Hous. Auth.*, 260 F.3d at 1077).  While the Court has no quarrel with that general proposition, *Karuk Tribe Housing Authority* is easily distinguished from this case: there was a reasonable question raised by the Karuk Tribe as to whether or not the statute the EEOC sought to enforce even applied to the Tribe because of sovereign immunity.  *Karuk Tribe Hous. Auth.*, 260 F.3d at 1077 ("[T]he Tribe's challenge to the EEOC—that the ADEA does not apply to Indian tribes, and that it enjoys sovereign immunity from the EEOC investigation—falls into a narrow category of cases that is ripe for determination at the enforcement stage.").  There is no such argument on Wal-Mart's part that it is immune from Title VII.

The reasons above are more than sufficient to reject Wal-Mart's position.  The Court also notes that, although Wal-Mart does not object to the EEOC's investigation of Collett's charges other than the retaliation claim, D.E. 18 at 5, those charges also fall within the ambit of the Consent Decree.  Section 102 of the Consent Decree enjoins Wal-Mart "from discriminating against females in hiring for orderfiller positions."  Consent Decree at 2.  Section 103 addresses non-retaliation.  *Id*.  Collett's claims of disparate impact and sex discrimination are to Section 102 as her claim of retaliation is to Section 103.  That Wal-Mart considers some classes of unlawful employment claims governed by Title VII and a separate class of unlawful employment claims governed by the Consent Decree, when **both** Title VII and the Consent Decree embrace **all** of the claims, strikes the Court as inconsistent at best.  All of Collett's claims are claims of unlawful employment practices in violation of Title VII; therefore, the EEOC has the authority to investigate all of Collett's claims.

Finally, Wal-Mart's argument that the investigatory authority described in Section 901 of the Consent Decree is exclusive and displaces the EEOC's general statutory authority to

investigate alleged Title VII violations that are related to the Consent Decree is meritless. *See* D.E. 18 at 12. Wal-Mart points to no language in the Consent Decree, and the Court can find none, that indicates such exclusivity. Indeed, Section 104 of the Consent Decree recognizes that: "This Decree does not affect the Commission's right to file suit on charges pending at the administrative level *or on any subsequently filed charges*, even if those charges allege violations occurring prior to the entry of this Decree." Consent Decree at 3 (emphasis added). This language recognizes the EEOC's continuing authority to pursue pending claims and claims arising after the Consent Decree's entry, and does not differentiate, as Wal-Mart does, claims related to the Consent Decree and claims unrelated to the Consent Decree. The acknowledged right of the EEOC in Section 104 to file suit on pending and future claims certainly carries with it the authority to investigate such claims through the use of the EEOC's statutory powers.

The retention of jurisdiction provision in the Consent Decree is merely the Court's indication of continuing authority to exercise its power of judicial review instead of any usurpation of the EEOC's investigatory authority. The Court therefore finds that the EEOC has the authority to investigate Wal-Mart's compliance with the Consent Decree to include issuing proper subpoenas.

### B. Purpose of the Subpoena

In its Response, Wal-Mart also argues that the EEOC is issuing the subpoena for an improper purpose, *i.e.*, "to opine on the propriety of Wal-Mart's use of the PAT during instatement, without being bound by this Court's determination that Wal-Mart's use of the PAT [in Case No. 01-339] was permissible." D.E. 7 at 15. It points to the fact that the language of the charge filed by Collett is almost identical to charges filed by other class members. *Id.* It also notes that the EEOC refused to interview a Wal-Mart representative in lieu of documentary

identification of the individuals involved in the decision to require class members to undergo the PAT as part of the instatement process. *Id.* at 17. At the motion hearing, Wal-Mart clarified that the EEOC's improper purpose is "circumventing the Court's authority to decide whether Wal-Mart violated this decree or not, and the EEOC stepping into the shoes of the Court deputizing itself to make that determination as to whether Wal-Mart violated the decree or not." D.E. 18 at 26–27. This objection to the subpoena is another way of saying that the EEOC lacks the authority to issue the subpoena because only the Court can decide if the Consent Decree has been violated. That argument against the EEOC's investigatory authority was addressed in Part II.A above and rejected.

Additionally, the authority cited by Wal-Mart does not support a finding of any improper purpose. Wal-Mart cites a number of cases for the proposition that the EEOC does not have the power to investigate matters beyond its reach, nor to go on fishing expeditions. D.E. 7 at 15. Wal-Mart particularly focuses on *EEOC v. Bashas', Inc.*, No. CIV 09-0209-PHX-RCB, 2009 WL 1783437 (D. Ariz. June 18, 2009), and that court's analysis of the EEOC's motive for issuing the subpoenas therein. D.E. 7 at 15. It requests this Court to look beyond the EEOC's statutory authority and undertake the same analysis. *Id.*

*Bashas'* is readily distinguishable for many reasons. First, the respondent claimed that the subpoena issued by the EEOC was an improper attempt to funnel confidential information to litigants and a union concerning pending litigation instead of a proper Title VII investigation. *See Bashas'*, 2009 WL 1783437 at *2–4. Here there is no such claim of potential misuse of the information sought by the EEOC. Second, the court in *Bashas'* was not confronted with a claim by the respondent that the EEOC lacked authority to issue the subpoena. Instead, the respondent was seeking to take counter-discovery. The court therefore addressed whether the respondent

had made the required preliminary and substantial demonstration of abuse by the EEOC to allow such discovery. *Id*. at *6. The court considered the claimed refusal by the EEOC to share the basis of its investigation with the respondent, the claim that the EEOC had refused to sign a confidentiality order, and the broad scope of the subpoena as factors relevant to whether there was an improper purpose behind the subpoena. *Id*. at *10. Thus, unlike Wal-Mart's position herein, the court in *Bashas'* was not confronted with an objection to the enforcement of the subpoena, but was assessing the required preliminary showing of an improper purpose to determine whether to allow discovery by the respondent. Additionally, the opinion concluded merely by scheduling a hearing on the claim to take such discovery. *Id*. Thus, although the court was evaluating a claim of improper purpose behind the issuance of the EEOC's subpoena, it did so only within the established rubric governing a respondent's request to take discovery. Wal-Mart makes no such request.

Wal-Mart claims that because the *Bashas'* court questioned the timing of the issuance of the subpoenas by the EEOC in comparison to adverse rulings and events concerning the employee litigants, this Court should question the EEOC's conduct following the Motion to Enforce the Consent Decree. On September 23, 2010, Wal-Mart provided the EEOC with required reporting on class members who had sought reinstatement. *EEOC v. Wal-Mart Stores, Inc.*, 6:01-CV-339-KKC-REW, D.E. 670-1 at 3. On October 14, 2010, the EEOC filed a Motion to Enforce Consent Decree (*Id.*, D.E. 670), and, according to the EEOC's Memorandum of Law in Support of Motion to Enforce Consent Decree, the information contained in that report formed the primary basis on which the Motion was filed. *Id.*, D.E. 670-1 at 3. Meanwhile, Collett filed her new charges on October 4, 2010. D.E. 1-4. On January 6, 2011, Chief Judge Caldwell entered her Opinion and Order allowing Wal-Mart to require the class members in Case No. 01-

339 to take the PAT as part of the instatement process. 6:01-CV-339-KKC-REW, D.E. 676. The EEOC had in its possession the information forming the basis of its Motion in Case No. 01-339 prior to Collett's charge. The fact that the EEOC waited until after Chief Judge Caldwell issued her Opinion and Order is perfectly reasonable: had Chief Judge Caldwell ruled in the EEOC's favor, Collett's claims could have been narrowed. Briefly delaying the start of an investigation in order to potentially conserve resources is not suspicious. While Wal-Mart advances the theory that the EEOC pursued investigation of Collett's charge "in the hopes of issuing its own decision on Wal-Mart's compliance with the decree[,]" D.E. 7 at 17, the EEOC is statutorily obligated to investigate Collett's charges. *See* 42 U.S.C. § 2000e-5(b). Contrary to Wal-Mart's claim, it would be improper for the EEOC ***not*** to investigate.

Wal-Mart raises the similarity of language between Collett's charges and other charges filed by class members as an indication "that the EEOC had a hand in drafting Ms. Collett's Charge." D.E. 7 at 15 n.5. To its Reply the EEOC attached Section 2.5 of the EEOC Compliance Manual, which reads, in relevant part, "[D]raft the charge in sufficient *general* detail to *identify the statutes, bases, and issues* involved and to preserve the private suit rights of all aggrieved persons covered by the charge." EEOC Compliance Manual § 2.5(a) (emphasis added). Citing this provision, the EEOC explains, "[t]o the extent multiple charging parties make the same allegations, the charges will be similarly drafted." D.E. 14 at 7. Laypersons cannot be expected to know what statutes have been violated, what constitutes a basis for a violation, or other issues that may be pertinent; they simply believe that an employer has discriminated against them. The fact that EEOC investigators draft charges dealing with similar issues in a similar manner guided by an internal compliance manual is not indicative of an improper purpose on the part of the EEOC.

Finally, Wal-Mart alleges that the EEOC's refusal to interview a corporate representative in lieu of accepting a list of names of the people involved in the decision to implement the PAT at DC 6097 during the instatement process is evidence of an improper purpose. D.E. 7 at 17. The EEOC has broad investigatory powers under 42 U.S.C. § 2000e-8, including the rights of access to and copying of "any evidence of any person being investigated or proceeded against that relates to unlawful employment practices." 42 U.S.C. § 2000e-8(a). The EEOC's request for a document or list identifying the individuals in question clearly seeks relevant information concerning Collett's charges of retaliation. Wal-Mart has cited no authority for the proposition that the EEOC is required to accept Wal-Mart's offer of a corporate representative in lieu of the requested documentation, or that failure to do so is indicative of an improper purpose. A bald allegation that an improper purpose is evidenced by one party's refusal to accept a unilateral substitution of information sought in a subpoena is not a winning argument. The undersigned finds no evidence of improper purpose on the part of the EEOC in issuing the subpoena.

### C.  Enforceability of the Subpoena

The subpoena may be enforced if it "(1) seeks relevant information; (2) is not unduly burdensome; and (3) is within the statutory authority of the EEOC." *EEOC v. Ford Motor Credit Co.*, 26 F.3d 44, 46 (6th Cir. 1994). "Since the enactment of Title VII, courts have generously construed the term 'relevant' and have afforded the Commission access to virtually any material that might cast light on the allegations against the employer." *EEOC v. Shell Oil Co.*, 446 U.S. 54, 68–69 (1984).

Wal-Mart does not argue that categories 1–4 of the subpoena are not relevant to Collett's claim of retaliation. Wal-Mart also does not argue that producing the materials sought by the EEOC is unduly burdensome, other than the assertion of general burdensomeness due to the

EEOC's purported lack of jurisdiction (an argument already rejected by the Court). The Court found above that the subpoena is well within the EEOC's statutory authority.

Because all three requirements for enforcement of an EEOC subpoena have been met, the undersigned will recommend to Chief Judge Caldwell that the EEOC's subpoena be enforced as written.

### D. Privilege Issues

The next point of contention between the parties is whether the information sought in categories 1–4 of the subpoena is privileged, either because of the work product doctrine or attorney-client privilege, and if so, how to proceed in light of that fact. "Although the EEOC is granted broad investigatory powers under Title VII, those powers are subject to recognized privileges and protections." *United States EEOC v. American Apparel, Inc.*, 327 F. App'x 11, 12 (9th Cir. 2009) (citations omitted).

In its Response, Wal-Mart maintains that "[i]f the EEOC wants information about the Company's decision to develop and implement the PAT, the EEOC investigator should accept Wal-Mart's officer to make available a corporate representative." D.E. 7 at 20. As discussed above, Wal-Mart has cited no authority for the proposition that the EEOC is obligated to accept such an offer in lieu of requiring Wal-Mart to provide non-privileged, responsive documents. As the holder of the claimed privilege or immunity, Wal-Mart bears the burden to demonstrate that any privilege applies. *See United States v. Roxworthy*, 457 F.3d 590, 593 (6th Cir. 2006) ("A party asserting the work product privilege bears the burden of establishing that the documents he or she seeks to protect were prepared in anticipation of litigation."), *United States v. Dakota*, 197 F.3d 821, 825 (6th Cir. 1999) ("The burden of establishing the existence of [attorney-client] privilege rests with the person asserting it.").

Wal-Mart directs the Court to *EEOC v. Lutheran Social Services,* 186 F.3d 959 (D.C. Cir. 1999), for the proposition that "privilege is an appropriate reason for refusing to comply with an EEOC subpoena." D.E. 7 at 19. The EEOC does not argue that it is entitled to privileged material or work-product protected material.[2] Instead, the EEOC argues that Wal-Mart's general claim of privilege does not satisfy its burden. D.E. 14 at 12–13. Unlike the broad privilege assertion made by Wal-Mart, the question in *Lutheran Social Services* was whether the defendant was required to turn over to the EEOC a single report that the defendant claimed was protected by the work product doctrine and attorney-client privilege. 186 F.3d at 960. Lutheran Social Services submitted affidavits to the court in supported of the proposition that the report was prepared by counsel at the request of the board of directors of defendant in anticipation of litigation. *Id.* at 968. The EEOC was unable to offer evidence or successfully argue that the circumstances surrounding the creation of the report were anything other than what was stated in the affidavits, and those circumstances led the court to the reasonable conclusion that the report was privileged. *Id.* at 968–69. In contrast, Wal-Mart is claiming entire classes of documents are privileged, and is offering no evidence in support of that assertion.

At the show cause hearing, however, Wal-Mart conceded the possibility that not every document or list responsive to categories 1–4 of the subpoena, such as an organizational chart, is privileged. *See* D.E. 18 at 42–43.[3] Wal-Mart also admitted that there was precedent for a court to order a privilege log during the subpoena enforcement stage of a proceeding of this type. *Id.* at 69–70. The EEOC initially argued that Wal-Mart had waived any claim of privilege as to documents or lists responsive to categories 1–4 in the subpoena, but indicated at the motion

---

[2] In an alternative and briefly presented argument, the EEOC asserts that Wal-Mart has effectively asserted good faith reliance on its attorneys and has therefore waived any privilege. D.E. 14 at 13. This argument is not developed enough to allow for meaningful consideration by the Court.

[3] The Court notes that the phrase "work chart" appearing in the transcript at Docket Entry 14, pages 42–43, should read "org chart," a shorthand term for organizational chart.

hearing that it did not "have any objection to Wal-Mart being given another opportunity to show why the documents are privileged." *Id.* at 65–67. Because Wal-Mart bears the burden of proving privilege, and given the representations of the parties, the undersigned will recommend to Chief Judge Caldwell that Wal-Mart be ordered to produce a privilege log to the EEOC that substantially complies with Federal Rule of Civil Procedure 26(b)(5)(A)(ii) within thirty (30) days of Judge Caldwell's ruling on this Recommended Disposition. To the extent disputed privilege issues remain, the parties may seek relief if, at that time, the moving party presents a valid jurisdictional basis and applicable procedure. To be clear, however, blanket assertions of privilege will be viewed with disfavor.

### E.    Testimony

Wal-Mart also objects to the EEOC's assertion that it may compel testimony, citing the fact that the subpoena does not include testimony among the categories sought. D.E. 7 at 20. The EEOC responds that Wal-Mart's objection is based on a desire to delay and hinder the EEOC's investigation, and that the Court should "end Wal-Mart's interference tactics." D.E. 14 at 14. The EEOC could not argue in good faith that the subpoena demands testimony, as it does not. *See* D.E. 1-6 at 1, 3–4. Significantly, the box labeled "Testify before:" is unchecked. *Id.* at 1. The Court will not compel testimony from Wal-Mart employees when such testimony is not sought by the subpoena, and will not check the requisite box when the EEOC did not. Presumably, the EEOC put significant thought into drafting the subpoena and chose not to request testimony from Wal-Mart. The Court will not second-guess that decision, nor will the Court exceed its authority to enforce the subpoena as written. The undersigned will recommend to Chief Judge Caldwell that Wal-Mart not be compelled to provide testimony to the EEOC on the basis of the plain intent of the subpoena.

### F.       Production of Materials Not Already in Existence

During the show cause hearing, Wal-Mart raised the issue that creation of a list responsive to one of the categories sought in the subpoena might reveal privileged information. D.E. 18 at 43–44.   In response, the EEOC requested the opportunity to brief the question of whether Wal-Mart was required to provide the EEOC with documents (or lists) that are not yet in existence, but would have to be created to respond to the subpoena.   *Id.* at 76.   The subpoena issued by the EEOC differentiates between "evidence" and "documents."   Evidence is, in relevant part, "any information whether presently compiled in documentary form or capable of being compiled and which exists in any form."   D.E. 1-6 at 3.   The definition of documents, however, does not contain any language indicating that a request for documents includes the duty to compile information and does not include the defined term "evidence."   *Id.*   In categories 1–4 of the subpoena (which are the only categories at issue at this point), the EEOC does not request "evidence;" rather, it seeks "documents," or "documents or lists."[4]   *Id.*   The Court allowed supplemental briefing on the issue, but cautioned the EEOC that case law reflecting only that the EEOC can require an employer to create or compile documents would not be helpful, and that the language of the subpoena is the critical issue.   *Id.* at 79–80.

Despite the Court's caution, the first page of the EEOC's brief states, "[A]ll Circuits to address the issue of an employer's obligation to compile information for the EEOC have concluded that employers have the obligation to compile information for the EEOC in a documentary form and that the EEOC's subpoena power is not limited to documents already in existence."   D.E. 19 at 1.   The EEOC continues, "[I]t makes no difference whether the EEOC

---

[4] Although the form subpoena states: "The *evidence* required is SEE ATTACHMENT A FOR A LIST OF ITEMS REQUIRED BY THIS SUBPOENA," D.E. 1-6 at 1 (emphasis added), it is the specific definitions chosen by the EEOC within Attachment A, and the EEOC's use of its own defined terms within categories 1–4 of Attachment A, that establish what information is responsive.

subpoena uses the word 'document' or 'list' or 'compilation or 'identify.'" *Id.* at 2. However, the issue is not the label given to the evidence sought by the EEOC in and of itself; the issue is whether compilation is commanded by categories 1–4 based on the plain language of the definitions chosen by the EEOC.

Wal-Mart correctly states that the EEOC has conclusively proven that it **could** have requested that Wal-Mart create documents or compile lists. D.E. 20 at 1. The EEOC highlights the various forms of evidence requested in *EEOC v. Maryland Cup Corp.*, 785 F.2d 471 (4th Cir. 1986), as evidence that the specific words describing the evidence sought (*e.g.*, documents or lists) do not affect whether or not the employer is required to create or compile documents. D.E. 19 at 3–4. However, the court in *Maryland Cup Corp.* did not relate the definitions of "document" or "list" in the subpoena in that case. If definitions in that subpoena included documents or lists to be created or compiled, then the conclusion that Maryland Cup Corp. was required to produce documents or lists not already in existence in compliance with a proper subpoena is wholly unremarkable.

The EEOC also relies on *EEOC v. Citicorp Diners Club, Inc.*, 985 F.2d 1036 (10th Cir. 1993) for the proposition that a subpoena need not explicitly request compilation or creation in order for the subpoena recipient to be required to compile or create. D.E. 19 at 4. Wal-Mart argues that the subpoena in *Citicorp Diners Club, Inc.* "clearly requested Citicorp Diners Club to create information, not 'provide documents' as requested here." D.E. 20 at 3. It points particularly to a request that Citicorp Diners Club, Inc. "provide a statement," which it argues would necessarily require creation. *Id.* at n.1.

Neither party points to the fact that the subpoena in *Citicorp Diners Club, Inc.* lacks a component of the subpoena in this case: a section of definitions. *See Citicorp Diners Club, Inc.*,

985 F.2d at 1042–43. The subpoena in *Citicorp Diners Club, Inc.* was open to interpretation about whether phrases such as "submit documents" or "provide a statement" applied to documents, statements, etc. not already in existence. However, the subpoena in this case is clear. Categories 1–4 of the subpoena state "provide documents or lists" (category 1), "provide documents" (category 2), and "provide copies of all documents" (categories 3 and 4). *Id.* at 3. There is not a definition for list, but there is for document, and that definition does not include documents not already in existence. *See id.*

Based upon the EEOC's chosen definition of "documents," categories 1–4 of the subpoena seek only extant records. The Court therefore finds that Wal-Mart should not be ordered to produce documents not already in existence.

### III. RECOMMENDATION

For the reasons stated above, the Court finds that the EEOC has authority to investigate Collett's claims of retaliation, did not issue the subpoena for an improper purpose, and that the subpoena meets the requirements necessary for judicial enforcement. Additionally, the Court finds that while Wal-Mart may not make a blanket claim of privilege, the issue of privilege can be efficiently resolved through the exchange of a privilege log and proceedings thereafter as described above. Finally, the Court finds that Wal-Mart is not required to provide the EEOC either with testimony or with documents not already in existence based on the plain language of the subpoena. Therefore, the Court **RECOMMENDS** that Chief Judge Caldwell **GRANT IN PART** and **DENY IN PART** Petitioner's Application for Order to Show Cause Why Subpoena Should Not Be Enforced (D.E. 1).

The Court directs the parties to 28 U.S.C. 636(b)(1) for appeal rights concerning this recommendation, issued under subsection (B) of that statute. As defined by section 636(b)(1)

and Federal Rule of Civil Procedure 72(b)(2), within fourteen days after being served with a copy of this recommended disposition, any party may serve and file written objections to any or all portions for de novo consideration by the District Court. The parties should consult the aforementioned statute and rule for specific appeal rights and mechanics. Failure to object in accordance with Rule 72(b)(2) waives a party's right to review.

This the 8th day of November, 2013.

Signed By:

*Hanly A. Ingram*

United States Magistrate Judge